O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DIANE D. HARVEY, | ) | NO. CV 12-2507-MAN |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Plaintiff filed a Complaint on March 30, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On October 9, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on December 7, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 30, 2009, plaintiff filed an application for SSI, alleging an inability to work since April 1, 2009, due to hypertension, back problems, and stress. (A.R. 14, 109-11, 126.)

The Commissioner denied plaintiff's application on July 23, 2009. (A.R. 68-73.) On August 25, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Christine Long (the "ALJ"). (A.R. 27-57.) Frank Corso, a vocational expert, also testified. (*Id.*) On January 26, 2011, the ALJ denied plaintiff's claim (A.R. 11-26), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 30, 2009, the date his application was filed. (A.R. 16.) The ALJ further determined that plaintiff has the severe impairments of "degenerative disc disease of the spine with cervical and lumbosacral spine stenosis," but does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.26). (A.R. 16, 18.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following limitations:

> lifting and carrying and pushing and pulling 10 pounds occasionally and frequently;
> sitting 6 hours total in an 8 hour workday; standing and walking 2 hours total in an
> 8 hour workday and must be able to alternate sitting and standing briefly every 30

minutes; occasional balancing, stooping, kneeling, crouching, crawling and climbing stairs or ramps; no climbing ladders, ropes or scaffolds; and frequently handling and fingering with the left hand.

(A.R. 18-19.)

The ALJ found that plaintiff was unable to perform her past relevant work ("PRW") as a child monitor, home attendant, and bus driver. (A.R. 21.) However, based upon plaintiff's age, education, work experience, and RFC, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "charge account clerk," "call out operator," and "order clerk." (A.R. 22.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since April 30, 2009, the date the application was filed. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995

(9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following five issues: (1) the ALJ improperly failed to find plaintiff's depression, headaches, high blood pressure, upper left extremity pain, and obesity as severe impairments; (2) the ALJ and Appeals Council failed to find that plaintiff met or equaled Listing 1.04; (3) the ALJ failed to consider plaintiff's side effect of frequent urination from her medications; (4) the ALJ failed to consider plaintiff's subjective complaints; and (5) the Appeals Council failed to consider properly newly submitted evidence.[2] (Joint Stip. at 2-3.)

---

[2] The Court will address plaintiff's claims in a different order than that in which they are presented in the Joint Stipulation.

**I.   The ALJ Properly Considered The Side Effects Of Plaintiff's Medication (Ground Three)**.

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (citation omitted).  Such factors "may include side effects of medications as well as subjective evidence of pain." *Id.* at 818.  When the ALJ disregards the claimant's testimony regarding limitations arising from the side effects of medication, the ALJ must support that decision with specific findings similar to those required for excess pain testimony, provided the side effects are, in fact, associated with the claimant's medications.  See Varney, 846 F.2d at 545. However, medication side effects must be medically documented to be considered.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985).

While plaintiff states that she suffers from, and her ability to work is limited by, frequent urination that is a side effect of prescribed diuretics, there is no evidence that she reported this side effect of her medication to her treating physicians or that her treating physicians reported any functional limitations due to the alleged side effect.  Further, plaintiff fails to cite any evidence in the medical record that she complained of frequent urination to any physician.  Moreover, plaintiff fails to cite to any medical evidence that frequent urination caused her any functional limitations. *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (Side effects not "severe enough to interfere with [plaintiff's] ability to work" are properly excluded from consideration).  Thus, because there is little evidence to support plaintiff's assertion, the ALJ was not required to specifically address this symptom. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence . . . the ALJ does not need to 'discuss every piece of evidence'"); *see also* Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (finding that, because the claimant had never raised the issue of fatigue with his doctors, the ALJ properly limited his hypothetical questions to medical assumptions with objective support in the record).

Based on the foregoing, the Court finds that the ALJ did not err by failing to consider the frequent urination caused by plaintiff's medications.[3]

## II. The New Evidence Submitted To The Appeals Council Materially Undermines The ALJ's Decision (Ground Five).

Following the ALJ's adverse ruling, plaintiff submitted additional medical evidence to the Appeals Council. (A.R. 5.) Specifically, plaintiff submitted a February 14, 2011 "Spinal Impairment Questionnaire" and "Independent Medical Evaluation – Neurology" completed by Dr. David L. Edelman, M.D. (A.R. 5; 270-280.) Plaintiff also submitted a May 14, 2011 lumbar spine MRI from Harbor/UCLA Medical Center. (A.R. 5; 283-84.)

The Appeals Council considered the new evidence but determined that there was "no reason under our rules to review the [ALJ's] decision" and, thus, denied plaintiff's request for review. (A.R. 1.) Because the Appeals Council considered the newly submitted evidence in deciding whether to review the ALJ's decision, this Court also must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"); Warner v. Astrue, 859 F. Supp. 2d 1107, 1114–15 (C.D. Cal. 2012) (though the Appeals Councils is not required to

---

[3] Plaintiff also asserts that, although the ALJ included a limitation to occasional fingering and handling in a hypothetical posed to the VE, the ALJ failed to consider this limitation in determining the work that plaintiff could perform. (Joint Stip. at 13.) While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical that ultimately serves as the basis for the ALJ's determination. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). There was no evidence in the record, and plaintiff fails to cite to any, supporting a limitation of occasional fingering and handling. Thus, the ALJ was not required to adopt any such limitation in determining the type of work plaintiff could perform.

6

provide reasons for discounting additional evidence, the Court reviews "the ALJ's decision in light of the record as a whole, including the evidence submitted for the first time to the Appeals Council")(*citing* Taylor v. Comm'r v. Soc. Sec. Admin., 659 F.3d 1228, 1231–32 (9th Cir. 2011)). The Court may remand upon finding that "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis." *Id.* at 1117.

The Court finds there is a substantial likelihood that the newly submitted evidence to the Appeals Council could have altered the ALJ's RFC and disability analysis.

On February 14, 2011, after reviewing plaintiff's medical records and physically examining plaintiff, examining physician Dr. Edelman diagnosed plaintiff with cervical and lumbar stenosis. (A.R. 270.)  He opined that plaintiff:  could sit two hours and stand/walk up to one hour in an eight-hour work day; can lift up to five pounds frequently, up to twenty pounds occasionally, and carry up to ten pounds; and should do no pushing, pulling, kneeling, bending or stooping.  (A.R. 273-74, 276.)  As a result, Dr. Edelman opined that plaintiff could not work a full time competitive job on a sustained basis, that she would be absent from work more than three times a month, and that her prognosis was guarded.  (A.R. 270, 275.)

As an initial matter, and contrary to the Commissioner's contention, Dr. Edelman's opinion is relevant to the determination of whether plaintiff was disabled during the relevant disability period at issue.  Dr. Edelman notes that plaintiff's symptoms and limitations assessed in his Questionnaire began in April 2009 -- during the disability time period at issue.  (A.R. 276.)  Dr. Edelman's opinion thus relates to the disability period at issue and is relevant to plaintiff's disability determination.

The ALJ gave little weight to the opinions of consultative examiner Dr. Mehran Sourehnissani and state agency medical reviewer Dr. J. Preston, the only medical opinions before

7

the ALJ assessing the physical and functional limitations caused by plaintiff's impairments. (A.R. 20-21.) Both Dr. Sourehnissani and Dr. Preston assessed plaintiff as capable of performing light level exertional work.[4] The ALJ, giving plaintiff the benefit of the doubt based on some of her subjective complaints, assessed an even more restrictive RFC of sedentary[5] work with additional limitations beyond those found by Dr. Sourehnissani and Dr. Preston. However, Dr. Edelman assessed plaintiff with functional limitations more severe than those the ALJ found and incorporated into her RFC assessment. Indeed, Dr. Edelman's assessed limitations suggest a totally disabling level of impairment. Thus, had Dr. Edelman's opinion been credited, the ALJ could have found plaintiff to have more significant limitations than those specified by the ALJ in her decision or, perhaps, could have found plaintiff to be disabled.

Further, there is no vocational expert evidence concerning whether work exists that could be performed by plaintiff if she were found to have the limitations with which she was assessed by Dr. Edelman. Therefore, in view of the evidence before the ALJ and the additional evidence submitted only to the Appeals Council, this Court cannot conclude that the ALJ's decision is supported by substantial evidence, or that any error in failing to consider Dr. Edelman's assessment of plaintiff's limitations is harmless. Accordingly, this case must be remanded to permit the ALJ to evaluate Dr. Edelman's opinion in the light of all the medical evidence.

---

[4] On June 26, 2009, Dr. Sourehnissani completed an internal medicine evaluation of plaintiff. (A.R. 164-69.) Dr. Sourehnissani diagnosed plaintiff with hypertension, chest pain with atypical features, and low back pain. (A.R. 167.) Dr. Sourehnissani opined that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and that she could stand, walk, and sit for six hours. (A.R. 168.) On July 21, 2009, Dr. Preston concurred with Dr. Sourehnissani's RFC assessment of plaintiff. (A.R. 170-74.)

[5] Sedentary work involves lifting no more than ten pounds at a time. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally. "Occasional" means very little, up to one third of the time (about two hours of an eight hour work day). Social Security Ruling ("SSR") 83–10, 1983 WL 31251, *5.

**III. On Remand, The ALJ Must Reconsider Her Step Two Analysis With Respect To One Of Plaintiff's Allegedly Severe Impairments (Ground One).**

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. § 416.920(a)(4)(ii) and (c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities.[6] 20 C.F.R. § 416.920(c). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.' " Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir. 2005) (citation omitted; emphasis in original). When determining whether an impairment is severe, a claimant's age, education, and work experience will not be considered. 20 C.F.R. § 416.920(c).

Plaintiff argues that the ALJ erred by failing to find her depression, left upper extremity pain, headaches, high blood pressure, and obesity to be severe impairments at step two. (Joint Stip. at 3.) In her decision, the ALJ determined that plaintiff only has the severe impairments of "degenerative disc disease of the spine with cervical and lumbosacral spine stenosis." (A.R. 16.) The Court finds that the ALJ erred in finding that plaintiff's obesity was not a severe impairment.

---

[6] Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). Examples of such activities include: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling"; (2) the capacity for "seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) the "[u]se of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.*

### 1. Depression

In finding that plaintiff's depression was not severe, the ALJ relied on the consultative psychiatric examination by Dr. Sohini P. Parikh and the state agency medical consultant's psychiatric review, both conducted in July 2009. (A.R. 17-18; 175-81, 182-92.) Dr. Parikh found that plaintiff suffered from "Mood disorder, not otherwise specified" and "alcohol abuse (last used last year)." (A.R. 179-80.) Dr. Parikh opined that plaintiff's "prognosis is expected to improve if her medical condition improves," and he advised that plaintiff "stay away from alcohol." (A.R. 180.) Dr. Parikh assessed plaintiff a Global Assessment of Functioning ("GAF") score of 70[7] and assessed no functional limitations. (A.R. 180-81.)

The state agency reviewing medical consultant agreed that plaintiff's mental impairment was not severe. (A.R. 192.) Moreover, Dr. Parikh's report is the only psychiatric examination of plaintiff in the record. Thus, the medical evidence amply supports the ALJ's finding that plaintiff's depression was not a severe impairment.

### 2. Hypertension, Headaches And Left Upper Extremity Pain

Although plaintiff was diagnosed as suffering from hypertension (A.R. 164), the mere fact that she has been diagnosed with an impairment -- or even has received treatment for it -- is not sufficient to establish severity, especially, as here, when plaintiff fails to cite to any evidence in the record that she has any actual work-related limitations stemming from her hypertension. *See* Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is

---

[7] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000) ("DSM"). A GAF score within the range of 61–70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

insufficient proof of a disability").

There is no objective evidence in the record that either plaintiff's headaches or her left upper extremity pain is a severe impairment that affects her ability to perform basic work activities. While it is true that the ALJ must take into account a claimant's pain and other symptoms at step two, the severity determination is made solely on the basis of the objective medical evidence in the record. SSR 85–28, 1985 WL 56856 *4. Plaintiff can only establish an impairment if the record includes signs -- the results of "medically acceptable clinical diagnostic techniques" --as well as symptoms.[8] *See* Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005). With these standards in mind, plaintiff cannot establish that her headaches and left upper extremity pain amount to medically determinable impairments (severe or otherwise). Instead, it is plaintiff's subjective complaints of headaches and left upper extremity pain she cites in support of her condition. These records, standing alone, do not and cannot establish a finding of a medically determinable impairment under the Act.

Even assuming, *arguendo*. the ALJ erred in neglecting to consider plaintiff's hypertension, headaches, and upper left extremity pain at step two, plaintiff fails to show the error was harmful. Where an ALJ fails to find an asserted impairment severe at Step Two, but nonetheless accounts for that impairment at Step Four in the residual functioning capacity analysis, any alleged error in failing to find the disorder "severe" at Step Two is harmless. *See* Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding that any error the ALJ committed in failing to list plaintiff's bursitis at step 2 was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the bursitis at [s]tep 4"). In determining plaintiff's RFC, the ALJ stated that she considered the "totality of the record and, to an extent, [plaintiff's]

---

[8] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005(*quoting* SSR 96–4p, 1996 WL 374187, at *1). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" *Id.*

11

testimony." (A.R. 19.) The ALJ then discussed, *inter alia,* plaintiff's complaints of headaches, high blood pressure, and left shoulder pain. (*Id.*) Thus, any error in failing to include plaintiff's hypertension, headaches, and upper left extremity pain at step two was harmless error.

### 3. **Obesity**

Although obesity was removed from the Listing of Impairments in 1999, "[o]besity may still enter into a multiple impairment analysis, but only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). In Celaya, the ALJ's failure to consider evidence of the claimant's obesity in a multiple impairments analysis was held to constitute reversible error because: (1) it was raised implicitly in the claimant's report of symptoms; (2) it was clear from the record that the claimant's obesity was at least close to the listing criterion and was a condition that could exacerbate her reported illnesses; and (3) in light of the claimant's *pro se* status, the ALJ's observation of the claimant and the information in the record should have alerted him to the need to develop the record in respect to her obesity. *Id.* at 1182. Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. *See* Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005).

Here, the ALJ does not reference obesity or plaintiff's weight at any point in any stage of the disability analysis. Upon review of the record, the Court finds several significant references to plaintiff's obesity. The record indicates plaintiff was assessed as being "obese" and "moderately obese" on two occasions. (A.R. 165, 278.) Additionally in February 2010, plaintiff was reported to be 5 feet, 5 inches tall and 200 pounds, and on June 2010, plaintiff was 220 pounds. (A.R. 239, 242.) These weights yield a body mass index ("BMI") ranging from 33.3 to 36.6. Social Security Ruling 02-1p notes that a BMI of 30.0 or above reflects "obesity." *See* SSR 02-1p, 2000 WL 628049, *2.

12

Further, there was a treatment note linking plaintiff's weight to her back problems. On July 31, 2009, a treating physician noted that plaintiff was encouraged to "decrease caloric intake and exercise as losing weight will help with back pain." (A.R. 207.) Thus, this progress note indicates a connection between plaintiff's musculoskeletal problems and her obesity.

Plaintiff's initial filings with the Social Security Administration did not raise obesity as an impairment, and mentioned only her hypertension, back problems, and stress. Subsequently, her counsel sent a letter to the ALJ and Appeals Council, pointing out that plaintiff's "morbid obesity" should be considered a severe impairment. (A.R. 107, 161.)

Although there are only a few reports discussing plaintiff's weight and no record of a BMI, there was sufficient evidence and argument to put the ALJ on notice that obesity should be considered it as a limiting factor, especially in view of the fact that plaintiff's severe back problems likely were affected by her obesity. A consideration of the impact of plaintiff's obesity on her other impairments may make a difference to the assessment of her limitations. As explained by Social Security Ruling 02–01p:

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.

*See* SSR 02-1p.

Furthermore, although SSR 02–01p makes clear that obesity is a disease that must be

considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," the ALJ "will evaluate each case based on the information in the case record." Because the ALJ did not identify obesity as a medically determinable impairment or consider the effects of obesity, alone or in combination with other impairments, at any step of the sequential process, her failure to consider obesity in assessing plaintiff's ability to perform work constituted reversible error. Celaya, 332 F.3d at 1183–84.

Because there is no evidence that the ALJ actually considered plaintiff's obesity in her disability analysis, the Court cannot conclude that the ALJ's error was harmless. *See, e.g.*, Morris v. Barnhart, 2004 WL 1238397 *4 (E.D. Pa. May 10, 2004) ("As the ALJ did not provide an explanation in her report as to whether Plaintiff's obesity was considered, the Magistrate Judge could not make a factual finding that the Plaintiff's obesity did not have an impact"). Thus, on remand, the ALJ must consider whether plaintiff's obesity exacerbates an impairment as an additive, impairing factor. Accordingly, the matter will be remanded for further consideration by the ALJ, and further development of the record if necessary.

### IV. On Remand, The ALJ Also Should Reconsider Whether Plaintiff Met Or Equaled Listing 1.04 In Light Of Plaintiff's Obesity (Ground Two).

Plaintiff argues that the ALJ erred by failing to obtain a medical expert opinion on medical equivalence at step three of the sequential evaluation process. 20 C.F.R. § 416.926. Plaintiff also asserts that the record now includes new medical reports establishing that she meets the criteria for Listing 1.04.

Plaintiff bears the burden of proving that her impairment or combination of impairments meets or equals the criteria of a Listing. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); *see* Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (burden

14

is on the claimant to show that his or her impairment meets all of the specified medical criteria for a Listing or to present medical findings equal in severity to all the criteria for the one most similar listed impairment). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995); see Zebley, 493 U.S. at 532, 110 S. Ct. at 891 (noting that the Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary").

Here, plaintiff failed to carry her burden with respect to establishing that her impairments meet the impairments set forth in Listing 1.04. Plaintiff presented no evidence of nerve root compression or spinal arachnoiditis, which are necessary impairments to support a Listing 1.04A or a Listing 1.04B finding, respectively. Zebley, 493 U.S. at 530 (noting that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). Plaintiff, relying on the requirements of Listing 1.04A when "there is involvement of the lower back," argues that the new evidence submitted to the Appeals Council includes a report by Dr. Edelman, who found that plaintiff's straight leg test was positive. (Joint Stip. at 9; A.R. 278.) Indeed, Dr. Edelman found that plaintiff's "[s]traight leg raising produced low back pain at 45 [degrees] on the left and was negative on the right." (A.R. 278.) However, Dr. Edelman did not note a positive straight leg-raising test in the *supine* position, which is also a requirement to meet Listing 1.04A "if there is involvement of the lower back." *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

Moreover, in other examinations in the record where a straight leg-raising test was performed, the examining physician noted that plaintiff's "[s]traight-leg-raising test [wa]s negative in the sitting and supine positions," and negative for "[straight leg raising]." (A.R. 166, 204.) Plaintiff does not assert that Dr. Edelman's examination was evidence of a positive straight leg-raising test in the supine position, and the Court cannot conclude that it was clear evidence

of such.

With respect to Listing 1.04C, even if the Court were to accept all of plaintiff's alleged impairments, plaintiff, at best, meets some, but not all, of the requisite medical criteria. Although there is evidence that plaintiff suffers from lumbar spinal stenosis, critically, plaintiff fails to present any evidence that she has an "inability to ambulate effectively"[9] -- a specified medical criteria for a Listing 1.04C finding. *Id.* (noting that "[a]n impairment that manifests only some of [the specified medical] criteria, no matter how severely, does not qualify").

Additionally, plaintiff fails to proffer a theory or evidence showing that her combined impairments equal a Listing. Accordingly, plaintiff did not meet her burden.

However, as obesity is a medically determinable impairment, SSR 02-01p reminds adjudicators to "consider its effects when evaluating disability. . . . [ALJs are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." *See* SSR 02-1p. Thus, as the ALJ failed to consider plaintiff's obesity in her decision, on remand, the ALJ must consider how plaintiff's obesity may interact with her other impairments in determining whether she meets or equals Listing 1.04.

---

[9] As defined by Section 1.00B2 of the Listings, an "inability to ambulate effectively" means an "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functions of both upper extremities." *See* Section 1.00B2b(1). This provision cites as "examples," *inter alia*, an "inability to walk without the use of a walker, two crutches or two canes" or an "inability to use standard public transportation" or an "inability to carry out routine ambulatory activities, such as shopping" or an "inability to climb a few steps at a reasonable pace with the use of a single hand rail." *See* Section 1.00B2b(2)

## V. On Remand, The ALJ Must Reassess Plaintiff's Credibility Regarding Her Subjective Symptoms And Pain (Ground Four).

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 885 (9th Cir. 2204); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 416.929(a)(explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(c).

Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 23.) Further, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they varied from the ALJ's own RFC assessment. (*Id.*) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

As acknowledged by the ALJ, plaintiff testified at the hearing that she is unable to work due to "chronic pain in her lower back that radiates up to her neck and left shoulder." (A.R. 19, 41.)

17

The pain is mainly on her left side but it goes down both legs. (A.R. 19, 42.) Plaintiff allegedly experiences constant pain. (A.R. 19, 43.) Additionally, she experiences headaches as a side effect from pain medication and her high blood pressure. (A.R. 19, 41, 47-48.) Plaintiff testified that her medication makes her drowsy. (A.R. 45, 47.) She also testified that her diuretics cause frequent urination. (A.R. 47.)

Plaintiff testified that she receives help from her sister and daughter including getting dressed and cooking meals. (A.R. 44-45.) Plaintiff does not drive or use public transportation, but occasionally visits friends and relatives. (A.R. 45.) Plaintiff testified that she is able to stand and walk for five minutes. (A.R. 44-45.) She could sit for 10 to 15 minutes without getting up and lift less than five pounds. (A.R. 46.) Plaintiff has particular problems with her left hand, and she is left handed. (*Id.*)

As this case is being remanded for the ALJ to consider Dr. Edelman's opinion and plaintiff's obesity, which may support plaintiff's complaints and her alleged limitations which the ALJ deemed to be unsupported by the objective medical evidence, the Court does not reach plaintiff's claim that the ALJ erred in finding plaintiff to be not credible, but directs that plaintiff's credibility be carefully reassessed on remand.

### VI.  Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and

it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. On remand, the ALJ needs to evaluate all the new evidence submitted to the Appeals Council to determine what impact, if any, it has on her ultimate disability determination. Further, should the ALJ reject that evidence, the ALJ shall give appropriate reasons for so doing that are supported by substantial evidence of record. The ALJ must also consider the effects of plaintiff's obesity in connection with her other impairments. Once these issues are properly addressed and clarified, the ALJ can determine what impact, if any, this has on her assessment of plaintiff's credibility. After correcting the above errors and deficiencies, the ALJ may need to reassess plaintiff's RFC, in which case, additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 29, 2013

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE